B. H. HUDSON ET AL., RESPONDENTS, v. LINCOLN CASUALTY COMPANY, APPELLANT.*

Kansas City Court of Appeals. May 24, 1926.

*Corpus Juris-Cyc References: Corporations, 14aCJ, p. 1201, n. 26.

*Lindsay & King* for respondents.

*Landis & Duncan* for appellant.

ARNOLD, J.—This is an action to recover on a policy of automobile insurance. Defendant is a corporation organized and existing

under the laws of the State of Illinois with headquarters at Springfield, Ill., and authorized to do business in the State of Missouri. The Rullman Auto Company, one of the plaintiffs, was a corporation, organized and existing under the laws of the State of Missouri, engaged in the purchase and sale of automobiles, chiefly second hand, and located at St. Joseph, Mo.

On or about June 19, 1923, plaintiff B. H. Hudson, a resident of St. Joseph, purchased from the Rullman Auto Co., a Peerless automobile, touring car model, 1921, and gave in payment therefor, a secondhand Dodge touring car for which he had paid $350, encumbered by a mortgage for $120, and on which he expended a considerable sum for repairs, and in addition, gave his note and mortgage on the Peerless car for $500, payable in monthly installments of $35 each, to which were added $45 as carrying charges. He also paid over to the Rullman Company $21 premium for the insurance required by them on the Peerless car.

The Rullman Company told Hudson they thought he could get the car insured for $1200. The matter of placing the insurance was in the hands of the Rullman Company who conferred with defendant about it, with the result that defendant wrote a policy for $1200 on on the car, covering, among other things, loss by fire. The record shows that four or five days after Hudson's purchase of the Peerless car the agent of defendant started to Hudson's house to see the car and met Hudson on the road. Hudson testified the agent looked at the car and that nothing was said about the price he had paid for it. He further testified he had never talked to defendant's agent about the car at any other time. Hudson testified that a formal application for the insurance was prepared by the agent and signed by Hudson, who cannot read nor write, except his name. The heading of the application is as follows:

"Lincoln Casualty Company
Application

No. A-25337

"A" Amount Fire or Theft Insured $1200.00
(See Company's Limits and Prohibitive List)
To be filled in by agent.

| Coverage | | Amount of Insurance | Premium | | |
|---|---|---|---|---|---|
| Fire rate, | $70 | $1200 | Amount, | $ | 8.40 |
| Theft rate, | $75 | $1200 | Amount | $ | 9.00 |
| | | | Total Premium | | $17.40 |

1. Name B. H. Hudson, Address, St. Joseph, Mo."
Sec. 15 of the application is as follows:

"The actual cost to the assured of the above-described automobile, without additional equipment, if any. . . ."

It is in evidence that Hudson paid a considerable sum for repairs on the car after purchasing it.

The policy issued on July 21, 1923, upon said application, provided for payment of loss, if any, to the Rullman Auto Company as their interest might appear, and the policy was delivered to that company and was never in possession of plaintiff Hudson.

About midnight on August 9, 1923, Hudson was driving the car south of St. Joseph in the direction of Bean Lake when rain began falling and the roads became slippery. He decided to return to St. Joseph and in endeavoring to turn around, the car skidded from the road, the front end thereof going into a ditch alongside. Efforts to get the car out of the ditch under its own power were unsuccessful and resulted in the engine becoming "red hot." Later an effort was made by a friend of Hudson to pull the car out by means of another automobile, but it appears the engine of the Peerless car was lower than gasoline tank and the engine again raced until it became "red hot," with the result that the car caught fire and was badly damaged. There is some dispute as to the extent of the damage. Plaintiff claims total destruction while defendant declares the body and wiring only were totally destroyed and that the tires and accessories were not destroyed nor the engine damaged. Being unable to extricate the car from the ditch it was left in its predicament.

The exact date of the notice of loss and to whom it was given are somewhat hazy, but it is clear that a report of the loss was made and that, later, plaintiff Hudson, in the office of one of defendant's counsel did make a statement giving details of the loss. It appears that in this statement, Hudson was not asked as to the purchase price of the car and made no statement relative to it; that on investigation defendant learned from the Rullman Company that the purchase price was $900; and thereupon Hudson was notified by letter that he must state the purchase price of the car before any settlement would be made; that unless an agreement could be reached, arbitration or appraisement would be insisted upon. Hudson refused to make any further statement about the matter, having already, as above stated, answered all the questions asked him. He then was notified that information as to the actual purchase price of the car must be given before further negotiations would be held. This suit followed.

The petition is formal and alleges the facts relative to the issuance of the policy wherein defendant promised and agreed to indemnify plaintiff to the extent of $1200 against destruction of the car by fire, loss, if any, payable to Rullman Auto Company, as its interest might appear; that on August 9, 1923, while said policy was in full force, the car was wholly destroyed by fire; that defendant was duly notified of the destruction of the car and proofs of loss were furnished.

That plaintiff has complied with all the terms and conditions of said policy; that at the date of the issuance of the policy and at the date of the fire, plaintiff B. H. Hudson was the owner of the car and the Rullman Auto Co., the holder of the mortgage thereon. Vexatious delay is charged and the statutory penalty and attorney's fee of $250 is asked.

The amended answer admits defendant's corporate status, that it issued the policy as stated in the petition, upon the application of plaintiff Hudson, and makes general denial of all other allegations of the petition. The answer specifically sets our paragraph 12 of the conditions and regulations of the policy relative to arbitration by appraisement in the event of disagreement. The answer further avers, as affirmative defense, that defendant requested plaintiff Hudson to submit to appraisers the question of the amount of damages to the insured car, as provided by paragraph 12 of the policy; that submission of the question to appraisers under the provisions of the policy is a condition precedent to bringing an action to enforce payment of the policy.

Further, the answer states that after the fire, plaintiff Hudson abandoned the car upon the highway and failed to notify defendant or its agents of the whereabouts of the care and by reason thereof, the car was stripped of many accessories by persons unknown to defendant. The amended answer further pleads paragraph 14 of the conditions and regulations of the policy, as follows:

"The liability of this company on any automobile purchased second hand by the policy-holder shall be an amount not to exceed eighty per cent of the purchase price paid therefor by the policy-holder during the first month after purchase. This amount shall be reduced thereafter by two per cent of said purchase price of automobile insured, and such reduction shall apply to its operating equipment as well as the machine itself."

The answer stated that at the time plaintiff Hudson made application for the said policy "he represented to defendant that the purchase price of said automobile was $1500, when in truth and in fact" the purchase price was $900 and, as part payment of the same plaintiff had traded and exchanged a Dodge automobile which, at the time, was mortgaged for its full value. It is further alleged that except for the fraudulent representations of said B. H. Hudson, as to the amount of the purchase price of the automobile mentioned in the policy, defendant would not have issued the same; that on account of said fraudulent warranty, the said policy is void. The answer further states that defendant had tendered into court for the benefit of plaintiffs the sum of $17.40, the amount of the premium paid by plaintiffs for said policy.

The reply is a general denial of all the allegations contained in defendant's answer and a specific denial that plaintiff Hudson refused to arbitrate, or that he disagreed as to the amount of loss; and avers that defendant refused to pay any amount whatever; states that plaintiff made every reasonable effort under the circumstances to protect said property under the terms of the policy. The reply further avers:

"That the amount of said policy was fixed by defendant and arrived at by its agent, and the application therefor was written and agreed to by the agent of said company for and on behalf of said defendant with full knowledge of all of the facts concerning the purchase and value of said automobile, and thereafter charged and received full payment therefor, and that said defendant thereby waived the conditions of said policy relating to the amount to be paid in event of loss of secondhand automobile, and is estopped to deny the amount to be paid thereunder in event of loss.

"Plaintiffs deny that there was any fraudulent representation made as to the purchase price of said automobile mentioned in their policy of insurance, or that any fraudulent warranties were made in their policy of insurance, or that any fraudulent warranties were made in connection therewith."

The cause was tried to a jury, resulting in a verdict for plaintiffs in the sum of $1200 and judgment therefor was duly entered of record. A timely motion for new trial was overruled and defendant has appealed.

At the close of plaintiffs' case, defendant requested instruction "A" in the nature of a demurrer, instructing the jury to find for defendant and against plaintiff Rullman Auto Co., and further requested instruction "B," also in the nature of a demurrer, in which it was sought to tell the jury that "under the law and the evidence your verdict must be for defendant."

Plaintiffs asked and were granted leave to amend the petition by interlineation, so that the first paragraph thereof reads as follows:

"Plaintiffs for cause of action against defendant state that defendant Lincoln Casualty Company is a corporation duly organized and existing under and by virtue of the laws of the State of Illinois, and that the Rullman Auto Company was a corporation organized under and by virtue of the laws of the State of Missouri and was on June 25, 1923, dissolved and at said time Glen W. Arnold, A. A. Rullman and O. T. Rullman were the sole stockholders and officers of said company, and were and are the trustees of said company."

Defendant's objection to said amendment was overruled by the court and thereafter the court refused defendant's instructions "A" and "B."

It is charged the court erred in refusing to give the peremptory instructions at the close of plaintiffs' case and again at the close of all the evidence, requiring the jury to find against plaintiffs, Rullman Auto Co. or O. T. Rullman, Glen W. Arnold and A. A. Rullman; that the court erred in refusing to give the peremptory instruction asked by defendant at the close of plaintiffs' case and at the close of all the evidence, requesting the jury to find for defendant against all the plaintiffs.

It is also charged the court erred in giving plaintiffs' instructions 1, 2, 3, 3a, 4 and 6, and in refusing defendant's instructions ''E'' and ''F,'' in refusing defendant's instructions ''G'' and ''H'' as presented and in giving these instructions as modified by the court; also in overruling the motion for a new trial.

In support of the first charge of error, it is insisted that the peremptory instructions should have been given, because (a) the suit was not brought and prosecuted in the name of the real parties in interest. In explanation of this charge of error defendant states the suit originally was instituted in the name of Hudson and the Rullman Auto Co., and that the amendment, by interlineation, substituted A. A. Rullman, O. T. Rullman and Glen W. Arnold, for Rullman Auto Co.

The testimony in chief shows that although it was alleged in the petition that Rullman Auto Co. was a corporation, this corporation had been dissolved sometime prior to the filing of the suit; that in June, 1923, Glen W. Arnold had purchased from the trustees all of the assets of the corporation and at the date of the filing of this suit he was the sole owner of all the said assets, including choses in action and was the real party in interest. It is argued that Glen W. Arnold, an individual, is not the same plaintiff as the Rullman Auto Company, a corporation dissolved, O. T. Rullman, A. A. Rullman and Glen W. Arnold, trustees.

This point is well taken. Section 1155, Revised Statutes 1919, provides:

''Every action shall be prosecuted in the name of the real party in interest, except as otherwise provided in the next succeeding section; but this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract.''

The point here involved was fully considered, discussed and decided in favor of defendant's contention in the case of Dickey v. Porter, 203 Mo. 1, 101 S. W. 586. As stated above, there was unrefuted testimony that Glen W. Arnold was the purchaser from the trustees of the Rullman Auto Company of all the assets of that company, and this including choses in action, and that he was the owner thereof at the time this suit was filed. Therefore, under the law he was the real party in interest. The peremptory instruction offered

by defendant should have been given and the court was in error in refusing to give it. Other points raised in defendant's brief need not here be discussed.

The judgment is reversed. *Bland, J.*, concurs; *Trimble, P. J.*, absent.

